

**SO ORDERED.**

**SIGNED this 28 day of April, 2017.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                                    CASE NO. 11-04050-8-DMW

MERIWETHER LEWIS, JR.
SUSAN STIEGEMEYER LEWIS

                                                          CHAPTER 13

        DEBTORS

## MEMORANDUM OPINION AND ORDER
## AWARDING DAMAGES FOR VIOLATION OF THE DISCHARGE INJUNCTION

This matter comes on to be heard upon the Debtors' Motion for Sanctions and Damages

("Motion") filed by Meriwether Lewis, Jr. ("Mr. Lewis") and Susan Stiegemeyer Lewis ("Ms.

Lewis") on February 1, 2017, seeking sanctions and damages from Rushmore Loan Management

Services, LLC ("Rushmore") and U.S. Bank, N.A., as Trustee for the RMAC Trust, Series 2012-

3T ("U.S. Bank").  The court conducted a hearing in Raleigh, North Carolina on April 12, 2017.

Cort I. Walker, Esq. appeared for Mr. Lewis and Ms. Lewis ("Debtors").  No one appeared at the

hearing on behalf of Rushmore or U.S. Bank.  The Debtors tendered nine exhibits which the court

admitted into evidence.  Based upon the pleadings, the case record, the evidence presented, the

testimony of Mr. Lewis and the arguments of counsel, the court makes the following findings of

fact and conclusions of law:

1.      This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.  The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2.      The Debtors filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on May 25, 2011.  The court appointed Trawick H. Stubbs Jr., Esq. ("Mr. Stubbs") as Chapter 13 trustee to fulfill the duties as provided in 11 U.S.C. § 1302.  The court subsequently appointed Joseph A. Bledsoe, III, Esq. ("Mr. Bledsoe") as successor Chapter 13 trustee.

3.      On Schedule D filed with the court, the Debtors listed Bank of the West as a creditor with a claim secured by a deed of trust ("DOT") on the Debtors' residence.  The Debtors estimated Bank of the West's claim to be $53,065.00 and proposed in their Chapter 13 plan to pay Bank of the West's claim with interest at 5.25% and monthly payments in the amount of $2,786.30.  Based on the proposed monthly payment amount, the Debtors would pay Bank of the West's claim in full through the plan.  The Debtors did not list any arrears owed to Bank of the West that would be cured through the plan.

4.      Bank of the West filed a proof of claim in the amount of $52,505.71, including $316.59 in arrears ("Claim"), and attached a copy of a promissory note ("Note") in favor of Bank of the West's predecessor in interest, Biltmore Mortgage Company.  Under the terms of the Note, all outstanding amounts due under the Note must be paid in full on or before May 1, 2018.

5.      Mr. Stubbs filed a Motion for Confirmation of the Debtors' plan on October 4, 2011.  The Motion for Confirmation proposed the same total plan payments as the Debtors had proposed, but did not list Bank of the West as a creditor to be paid through the plan.  The court

allowed the Motion for Confirmation and entered an Order confirming the plan with the terms that were included in Motion for Confirmation.

6.      On March 4, 2013, Bank of the West filed notice ("Transfer Notice") that it had transferred the Claim to Rushmore.  Based upon the case record and the Assignment of Deed of Trust attached to the Motion, it appears U.S. Bank became the beneficiary of the DOT, and Rushmore began servicing the loan.  Susan B. Shaw, Esq. ("Ms. Shaw") filed a Notice of Appearance as counsel for U.S. Bank on January 30, 2014.

7.      U.S. Bank[1] filed a Motion for Relief from Stay on June 12, 2014, seeking relief from the stay of 11 U.S.C. § 362 on the grounds that the Motion for Confirmation and corresponding confirmed plan made no reference to Bank of the West's claim.  The Debtors filed a Response, asserting the Claim had been paid in full through the plan.

8.      On September 30, 2014, the court entered a Consent Order ("Consent Order") between the Debtors and U.S. Bank.  The Consent Order acknowledged that the Motion for Confirmation did not reference the Bank of the West claim, but stated that "To date, the Trustee has treated the Claim as a total debt claim *with the balance due as of the Petition Date paid in full within the life of the Chapter 13 Plan*." (emphasis added).  The Consent Order allowed U.S. Bank a claim in the amount of $6,550.72 ("Additional Claim") in addition to the Claim, apparently in order to resolve an alleged deficiency due to unreimbursed escrow advances and the application of prior trustee disbursements to an escrow account, rather than to the principal balance.

9.      The court entered an Order of Discharge ("Discharge Order") on October 27, 2016 that stated "**Creditors cannot collect discharged debts**.  This order means that no one may make

---

[1] Neil D. Jonas, Esq. filed this Motion as attorney for U.S. Bank, but Matthew T. McKee, Esq. subsequently substituted himself as counsel for U.S. Bank.  Mr. McKee later filed a Notice of Disinterestedness, leaving Ms. Shaw as the attorney of record for U.S. Bank.

any attempt to collect a discharged debt from the debtors personally." (emphasis in Discharge Order).  The court sent the Discharge Order to Rushmore at the address provided on the Transfer Notice and to Ms. Shaw at the email address provided in her Notice of Appearance for U.S. Bank.

10.     The Final Report and Account ("Final Report") filed by the Trustee on November 22, 2016 states that the Trustee remitted to Rushmore principal payments totaling $52,505.71, satisfying the Claim in full.  The Final Report also reflects payments to Rushmore of $6,550.72 for the Additional Claim and $676.00 in attorneys' fees, pursuant to the Consent Order.  The Trustee sent the Final Report to Rushmore at the address provided on the Transfer Notice and to Ms. Shaw at the email address provided in her Notice of Appearance for U.S. Bank.

11.     The court entered a Final Decree and closed the Debtors' case on December 27, 2016.

12.     The Motion states that Rushmore and U.S. Bank failed to mark the DOT as satisfied upon payment in full of the Claim, and Rushmore has continued to send to the Debtors correspondences showing a balance due to Rushmore.  Neither Rushmore nor U.S. Bank filed a response to the Motion, but on February 17, 2017, shortly after the filing of the Motion, Rushmore filed a Satisfaction of Security Instrument with the Wake County Register of Deeds, terminating the effectiveness of the DOT and extinguishing the underlying obligation on the Note.  Mr. Lewis testified that the Debtors did not receive a copy of the Satisfaction of Security Instrument from Rushmore until two days before the hearing on the Motion.

13.     At the hearing, Mr. Lewis testified that after the Debtors paid the Claim in full, and the court closed the bankruptcy, Rushmore sent various correspondence ("Correspondence") that asserted incorrectly that a balance remained due on the Note.  For example, Rushmore sent the Debtors a letter dated January 11, 2017 which stated the Note and DOT were "in DEFAULT due

4

to non-payment of the installment, [sic] which was due on 10-01-11 and any other installments, costs, or fees due." (emphasis in letter).  The letter requested immediate payment of the $751.75 amount alleged to be due.  Rushmore also sent a statement showing a $1.00 balance due February 1, 2017 and warning that a late fee of $29.38 would be assessed if the $1.00 payment was not received by February 16, 2017.  A subsequent statement showed a $709.52 payment due March 1, 2017.

14.     Mr. Lewis noted that one item of Correspondence demanded a $1.00 payment and appeared to be computer-generated (in that a human representative would perhaps question the validity of a $1.00 balance), but Mr. Lewis believes the Correspondence showing any balance due are sent by Rushmore to debtors with the intent to see what payments Rushmore may be able to elicit from its naive customers.  In Mr. Lewis' opinion, the Correspondence indicated the DOT would not be marked as satisfied until the amounts requested were paid.  He also called the Correspondence "haphazard" and stated he believes they exhibit Rushmore's failure to examine computer-generated notices for accuracy and reasonability.  Mr. Lewis expressed frustration and fear that after five years of payments to the Chapter 13 trustee and the successful completion of their Chapter 13 plan, the Debtors are faced with a creditor that will not acknowledge payment in full through the Debtors' plan.  The Correspondence prompted the Debtors to seek advice from their bankruptcy counsel approximately six times.

15.     An order of discharge and the corresponding "discharge injunction" generally prohibit a creditor from taking action to collect or enforce a discharged debt as a personal liability of the debtor pursuant to 11 U.S.C. § 524(a).  Any liability to Rushmore or U.S. Bank was extinguished upon payment in full of the Claim and subsequent entry of the Discharge Order on October 27, 2016.  As neither Rushmore nor U.S. Bank filed a response or appeared at the hearing,

5

no party has argued that the Claim was excepted from discharge under 11 U.S.C. § 1328(a), but to be clear, the court finds that the Discharge Order discharged any debt to Rushmore or U.S. Bank related to the Claim.

16.     Generally, "as soon as practicable after completion by the debtor of all payments under the plan, . . . the court shall grant the debtor a discharge of all debts provided for by the plan. . . ." 11 U.S.C. § 1328(a).  Certain debts are excluded from the purview of a discharge order; for example, if a plan "provide[s] for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due," that claim is excepted from discharge. 11 U.S.C. §§ 1322(b)(5); 1328(a)(1).  Although the maturity date of the Note is not until May 1, 2018 and the Claim includes $316.59 in arrears, the Claim was not paid through the plan pursuant to § 1322(b)(5).  Rather than avail themselves of the repayment period permitted under the Note, the Debtors paid the Claim pursuant to 11 U.S.C. § 1325(a)(5). "[U]nder sections 1322(b)(5) and 1325(a)(5) a debtor dealing with a secured claim may either 'leave the contract intact . . . or alter the terms and pay the present value of the secured claim'" *In re Chappell*, 984 F.2d 775, 781 (7th Cir. 1993) (quoting *In re Hayes*, 111 B.R. 924, 926 (Bankr. D. Or. 1990).  Although the plan, as confirmed, did not provide for payment in full of the Claim, the Consent Order made clear that the Claim and the Additional Claim were to be paid in full through the plan.  That Consent Order effectively amended the Plan to allow for full payment of the Claim.

17.     None of the exceptions to discharge identified in or referenced by § 1328 is applicable to the Claim.  The Discharge Order confirmed that the Claim had been paid in full and discharged the Debtors' liability to Rushmore and U.S. Bank.

18.      "A violation of the discharge injunction is punishable by civil sanctions pursuant to [11 U.S.C.] § 105," as the violation is treated as contempt of the discharge order. *Americorp Fin., L.L.C. v. Schwarz (In re Schwarz)*, 2016 Bankr. LEXIS 4432 (Bankr. E.D.N.C. Dec. 22, 2016) (citing *Cherry v. Arendall (In re Cherry)*, 247 B.R. 176, 187 (Bankr. E.D. Va. 2000)).  The Fourth Circuit has adopted a two-part test to determine whether contempt sanctions are appropriate: "(1) whether the creditor violated the injunction, and (2) whether [it] did so willfully." *Bradley v. Fina (In re Fina)*, 550 Fed. Appx. 150, 154 (4th Cir. 2014).

19.      Rushmore and U.S. Bank had, at a minimum, constructive knowledge of the Discharge Order, as the court served the Discharge Order on Rushmore and U.S. Bank at the addresses (physical and electronic) provided by the parties.  The Discharge Order stated that "no one may make any attempt to collect a discharged debt from the debtors personally."  Rushmore violated the terms of the Discharge Order and related discharge injunction by sending the Correspondence in an attempt to collect from the Debtors.

20.      The willfulness prong of the Fourth Circuit's test for sanctions "requires only that the acts taken in violation of the injunction be intentional." *In re Fina*, 550 Fed. Appx. at 154. Courts have compared this willfulness element to willfulness in the context of a stay violation, requiring an intentional act with knowledge of the discharge injunction. *See id*.  The sending of each Correspondence was a willful act, even if the Correspondence was computer-generated. *See In re Ennis*, 2015 Bankr. LEXIS 3657 (Bankr. E.D.N.C. Oct. 28, 2015).  Rushmore willfully violated the discharge injunction when it sent the Correspondence and is in contempt of the Discharge Order.

21.      Although the failure of Rushmore and U.S. Bank to mark the DOT as satisfied does not constitute a direct attempt to collect on the Note, the continued presence of the DOT on the

public record made Mr. Lewis believe the DOT would not be marked satisfied until the Debtors paid the amounts listed in the Correspondence.  The inaction of Rushmore and U.S. Bank with regard to the DOT is ancillary to the Correspondence, which clearly constitute a violation of the discharge injunction.  The court will take that inaction into account when assessing what damages are appropriate, keeping in mind that "Congress enacted § 524(a) to insure debtors are not pressured *in any way* to pay discharged debts." *In re Arnold*, 206 B.R. 560, 564 n.3 (Bankr. N.D. Ala. 1997) (emphasis added) (citation omitted).

22.     The Debtors were adversely affected by the Correspondence.  Mr. Lewis' testimony was extremely credible, as he was careful not to embellish the damages caused by the Correspondence, but the court finds that they tarnished the "fresh start" Chapter 13 debtors look forward to as they dedicate from three to five years to repaying creditors through a plan.  The continued presence of the DOT on the public record, especially when viewed in light of the Correspondence being sent, also subjected the Debtors to unnecessary concern.  Under North Carolina law, the holder of a deed of trust must take affirmative action to accomplish the release of the deed of trust once the underlying note is satisfied. *See* N.C. Gen. Stat. § 45-36.3(a).[2]  "Any person, institution or agent who fails to comply with [N.C. Gen. Stat. § 45-36.3(a)]  may be required to pay a civil penalty of not more than one thousand dollars ($1,000) in addition to reasonable attorneys' fees and any other damages awarded by the court. . . ." N.C. Gen. Stat. § 45-

---

[2] "After the satisfaction of the provisions of any deed of trust or mortgage, or other instrument intended to secure with real property the payment of money or the performance of any other obligation and registered as required by law, the holder of the evidence of the indebtedness, if it is a single instrument, or a duly authorized agent or attorney of such holder shall within 60 days:
    (1) Discharge and release of record such documents and forward the cancelled documents to the grantor, trustor or mortgagor; or,
    (2) Alternatively, the holder of the evidence of the indebtedness or a duly authorized agent or attorney of such holder, at the request of the grantor, trustor or mortgagor, shall forward said instrument and the deed of trust or mortgage instrument, with payment and satisfaction acknowledged in accordance with the requirements of G.S. 45-37, to the grantor, trustor or mortgagor." N.C. Gen. Stat. § 45-36.3(a) (2005).

36.3(b) (2005).  The Debtors have not sought relief under N.C. Gen. Stat. § 45-36.3(b),[3] but the court finds instructive the North Carolina General Assembly's assessment of what constitutes an appropriate penalty.

23.     In assessing the appropriate sanction against Rushmore and U.S. Bank, the court also notes that rather than responding to the Motion, Rushmore merely sent to the Debtors a copy of the Satisfaction of Security Instrument that it filed to terminate the effectiveness of the DOT. The failure of Rushmore and U.S. Bank to communicate properly with the Debtors and their counsel precluded any mitigation of time and expenses spent on rectifying the situation.  Rushmore and U.S. Bank maintained an active presence in the Debtors' case and are sophisticated lenders familiar with bankruptcy proceedings and the United States Bankruptcy Code.  Their failure to rectify their records without the involvement of this court is unacceptable.  The Debtors should be awarded actual damages as compensation for their inconvenience related to the receipt of the Correspondence and the ongoing presence of the DOT on the public record, as well as for time spent contacting counsel about the Correspondence and DOT, travel expenses and Mr. Lewis' appearance in court.  The appropriate amount of damages to award to the Debtors is $2,500.00.

24.     The Debtors should also be awarded attorneys' fees as part of the sanction against Rushmore and U.S. Bank.  Counsel for the Debtors have incurred $4,500.00 in fees for time spent attempting to resolve this matter with Rushmore prior to filing the Motion, preparing and serving the Motion, and preparing for and attending the hearing on the Motion.  Counsel have incurred expenses of $100.00 related to the Motion.

---

[3] Arguably, the Debtors would not be entitled to relief under N.C. Gen. Stat. § 45-36.3(b) due to procedural requirements, *e.g.* giving 30 days' written notice of intent to file an action under N.C. Gen. Stat. § 45-36.3(b), which the Debtors have not met.

25.     Rushmore and U.S. Bank should be held jointly and severally liable for damages in favor of the Debtors and fees for Debtors' counsel, as a note holder and servicer should be held to the same standard and level of accountability to follow orders of this court and to respect the principles behind the United States Bankruptcy Code; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1.     The Motion is granted, and Rushmore and U.S. Bank are hereby held in contempt of the Discharge Order;

2.     As sanctions for their contempt of the Discharge Order, Rushmore or U.S. Bank shall remit the following payments within thirty days of the date of this Memorandum Opinion and Order as follows:

      a.     The amount of $2,500.00 in certified funds to the Debtors at

           6412 Gainsborough Drive, Raleigh, NC 27612; and

      b.     The amount of $4,600.00 in certified funds to the Sasser Law Firm at

           2000 Regency Parkway, Suite 230, Cary, NC 27518; and

3.     If Rushmore or U.S. Bank fails to remit timely either of these payments, the court shall enter an order requiring Rushmore and U.S. Bank to show cause why additional sanctions should not be imposed.

END OF DOCUMENT